UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANGEL PICHARDO-MARTINEZ**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES MARSHALS SERVICE**, <br><br> Defendant. | Case No. 1:18-cv-02674 (TNM) |

**MEMORANDUM AND ORDER**

Angel Pichardo-Martinez brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Marshals Service (the "Service"). Before the Court is the Service's Renewed Motion for Summary Judgment. This motion is ripe. For the reasons discussed below, the Court will deny the Service's motion without prejudice.

**I.**

Pichardo-Martinez, a federal prisoner, Compl. at 1,[1] ECF No. 1, was in the Service's custody in the Eastern District of Pennsylvania and the Northern District of Ohio, Supp. Kil Decl. ¶ 9, ECF No. 20-4. During that time, he was detained in two non-federal facilities, the Community Corrections Association facility in Youngstown, Ohio, and the Lake County Jail, both of which allegedly housed federal prisoners under contract with the Service. *See* Compl. at 2. According to Pichardo-Martinez, he was "assaulted in the Lake County Jail after being transported to the facility by [the Service]." Pl.'s Opp'n at 3, ECF No. 23 (emphasis removed).

---

[1] All page citations are to the page numbers that the CM/ECF system generates.

1

Pichardo-Martinez submitted a FOIA request to the Service for "all medical records that were generated at the Lake County Jail from September 21, 2015 to April 19, 2016," and "all records related to the ass[a]ult against [him] that occur[r]ed on or about September 21, 2015 to April 19, 2016." Compl. Ex. A. In a second FOIA request, he sought "all medical records that were generated at the Community Correction Association between September 1, 2015 to September 21, 2015," and "all medical records that were generated between April 19, 2016 to April 30, 2016." *Id*. Ex. C. He also sought copies of the contracts in effect at that time between the Service and these non-federal facilities. *See id*. Exs. A, C.

Although Pichardo-Martinez mailed his requests to the Service's Office of General Counsel ("OGC") on September 10, 2018, Compl. at 3; *see id*. Ex. B, OGC had no record of having received them, Kil Decl. ¶ 4, ECF No. 12-1. Instead, OGC treated the copies of the requests attached to Pichardo-Martinez's Complaint as new requests, *see id*. ¶ 6, and assigned them a single tracking number, 2019USMS33581, Supp. Kil Decl. ¶ 3.

A preliminary search of JDIS, "a centralized database containing the majority of prisoner data records collected by the [the Service]," *id*. ¶ 21, led OGC staff to conclude that the following offices were likely to maintain responsive records: the Eastern District of Pennsylvania, the Northern District of Ohio, and the Office of Medical Operations, Office of Detention Services, and Office of Contracts and Agreements within the Prisoner Operations Division, *id*. ¶ 10. Accordingly, OGC contacted the FOIA liaisons in these offices with instructions to conduct searches for records responsive to Pichardo-Martinez's request. *See id*. ¶¶ 11 (Eastern District of Pennsylvania), 14 (Northern District of Ohio), 17–18 (Prisoner Operations Division, including Office of Medical Operations, Office of Detention Services, and Office of Contracts and Agreements). Each liaison certified that a search had been conducted

and that potentially responsive records had been forwarded to OGC for review and processing. *See id*. ¶¶ 12, 15, 18. OGC staff then reviewed these potentially responsive records and concluded that no other office or location within the Service was reasonably likely to maintain responsive records. *Id*. ¶ 19.

On March 15, 2019, the Service "released 51 pages of what [it] believed were all responsive, non-exempt material[.]" *Id*. ¶ 4; *see id*. Ex. C. In a supplemental response on August 16, the Service sent Pichardo-Martinez 18 additional pages of records. *Id*. ¶ 5; *see id*. Ex. D. Upon further review of the documents released on March 15, OGC staff "determined that information had been incorrectly withheld on 4 pages of material (emails) due to an administrative oversight[.]" *Id*. ¶ 20. The Service reprocessed these four pages and sent them to Pichardo-Martinez with the supplemental response. *Id*. ¶ 5.

## II.

Courts can decide most FOIA cases on motions for summary judgment. *See Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). The Court may grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In a FOIA case, the Court conducts a *de novo* review of the record, and the federal agency bears the burden of proving compliance with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B); *see Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

# III.

The Service has failed to carry its burden at this stage. An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (cleaned up). The Court may grant summary judgment on the basis of the agency's supporting declarations, *see Military Audit Project*, 656 F.2d at 738, but to demonstrate the reasonableness of an agency's search, the declarations must "specify 'what records were searched, by whom, and through what process,'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)). Here, the Service's declaration falls short.

The declarant merely states in a conclusory fashion that searches were conducted without stating, for example, what search terms the Eastern District of Pennsylvania, Northern District of Ohio, or the Prisoner Operations Division may have used, or the types of files these offices maintain, or the process by which these searches were conducted. There simply are not enough proffered facts from which the Court could determine whether the Service has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).[2]

Indeed, the Court raised a similar concern in denying the Service's original Motion for Summary Judgment: "At a minimum, the agency must "specify 'what records

---

[2] Since the Service fails to show that it conducted an adequate search, the Court will not at this time address whether the Service properly invoked various FOIA exemptions or whether the Service disclosed all reasonably segregable material. *See* Mem. in Supp. of Renewed Mot. for Summ. J. at 11–20, ECF No. 20-2.

4

were searched, by whom, and through what process,'" *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)).  The Service failed to do so." Mem. Order 7/3/19 at 3, ECF No. 18.  Yet once again, the Service's declaration has come up short.

Accordingly, it is hereby

**ORDERED** that the Service's [20] Renewed Motion for Summary Judgment is DENIED without prejudice; it is further

**ORDERED** that the Service shall file any Second Renewed Motion for Summary Judgment with additional documentation on or before February 27, 2020; Pichardo-Martinez shall file his Opposition and any Cross-Motion for Summary Judgment on or before March 26, 2020; the Service shall file a combined Opposition and Reply on or before April 16, 2020; and Pichardo-Martinez shall file his Reply, if any, on or before May 7, 2020.

**SO ORDERED**.

Dated: January 27, 2020                                          TREVOR N. McFADDEN, U.S.D.J.