UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGEL PICHARDO-MARTINEZ, <br><br> Plaintiff, <br><br> v. <br><br> U.S. MARSHALS SERVICE, <br><br> Defendant. | Case No. 1:18-cv-02674 (TNM) |

MEMORANDUM OPINION

Angel Pichardo-Martinez, proceeding *pro se*, sues the United States Marshals Service ("USMS") under the Freedom of Information Act ("FOIA"). After two unsuccessful motions, USMS now seeks summary judgment for a third time. For the reasons discussed below, the Court will grant this motion.

I. BACKGROUND

**A. United States Marshals Service**

USMS, a component of the Department of Justice ("DOJ"), performs law enforcement functions including the "secur[ity] and transport [of] federal prisoners from arrest to incarceration." Def.'s Statement of Material Facts As To Which There Is No Genuine Issue ("SMF") ¶ 4, ECF No. 28-2. Its Office of General Counsel ("OGC") "is responsible for processing all [FOIA] requests . . . to any USMS office located throughout the United States." Second Suppl. Decl. ("2d Suppl. Decl.") ¶ 1, ECF No. 28-3.

**1. USMS Systems of Records**

The Justice Detainee Information System ("JDIS") "contain[s] the majority of prisoner data records collected by the USMS." SMF ¶ 5. It "consolidates multiple USMS applications or

systems of records, including the Prisoner Processing and Population Management/Prisoner Tracking System ('PPM/PTS') and the Warrant Information Network ('WIN')." *Id*.

PPM/PTS contains information about arrestees, fugitives, prisoners, and others in USMS custody, including prisoners who receive health care services under a USMS contract. 2d Suppl. Decl. ¶ 11. This system "capture[s] all information necessary to complete the administrative processing, housing, safekeeping, health care, and disposition of individual federal prisoners . . . in custody pending criminal proceedings." *Id*. It also includes "any law enforcement and security related records generated" while a prisoner is in USMS custody. *Id*.

WIN contains information about "individuals for whom federal warrants have been issued." *Id*. ¶ 12. It also contains information about individuals for whom state or local warrants have been issued if such warrants are "part of a USMS sponsored multi-agency task force." *Id*.

### 2. Procedures for Processing FOIA Requests

When USMS receives a FOIA request, OGC typically conducts a preliminary search of JDIS. SMF ¶ 5. Results of such preliminary searches determine whether or where OGC sends a particular request for further action. *See id*. ¶ 6. District and Headquarters offices have liaisons who "routinely coordinate and/or conduct document searches in their offices in response to [FOIA] requests." 2d Suppl. Decl. ¶ 13. Liaisons "are knowledgeable about the records and files maintained by their particular office as well as other personnel within their office likely to know if records regarding a specific subject or subject matter exist[] within the office." *Id*.

### B. Pichardo-Martinez's FOIA Requests

While in USMS custody, Pichardo-Martinez was detained in two non-federal facilities under contract with USMS to house prisoners: the Community Corrections Association facility

2

in Youngstown, Ohio and the Lake County Jail. *See* Pet. for Prelim. Inj. at 2,[1] ECF No. 1.[2] Pichardo-Martinez claims that he sent two FOIA requests to USMS in September 2018. *Id.* The first requested records about an assault he allegedly sustained at the Lake County Jail, including medical records, and a copy of the contract between USMS and the Sheriff of Lake County in effect between September 21, 2015, and April 19, 2016. *See id*. Ex. A. The second sought medical records generated at the Community Corrections Association facility in September 2015 and April 2016, and a copy of the contract between USMS and that facility in effect during those months. *See id*. Ex. C.

OGC has no record of receiving these requests. Decl. ¶ 4, ECF No. 12-1. It treated the copies of the requests attached to Pichardo-Martinez's Complaint as a new request, *see id*. ¶ 6, and assigned the request a single tracking number, *see* SMF ¶ 1.

### C. USMS's Searches for and Release of Responsive Records

The preliminary search of JDIS "indicated that . . . Plaintiff was arrested by the USMS and in USMS custody in the Eastern District of Pennsylvania . . . and Northern District of Ohio." *Id.* ¶ 7. This information, along with Pichardo-Martinez's requests for medical records, contracts, and records related to an assault, led OGC to conclude that three offices were likely to maintain responsive records: Eastern District of Pennsylvania ("E/PA"), Northern District of Ohio ("N/OH"), and Prisoner Operations Division ("POD"). *Id.* ¶ 8.

#### 1. Eastern District of Pennsylvania

E/PA maintains records about prisoners taken into custody in that district. *Id.* ¶ 9. Its personnel have access to JDIS, other electronic records systems maintained by DOJ, emails, and

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.
[2] The Court construes the Petition for Preliminary Injunction as a civil Complaint.

paper files, "including those related to Warrants, Criminal Operations (*e.g.*, Form USM-312, *Personal History of Defendant*, Form USM-552, *Prisoner Medical Release Form*, criminal court records), Civil or Civil Process (*e.g.*, court orders), and Asset Forfeiture (*e.g.*, forfeiture orders), which are maintained in the district." *Id*. The declarant explains that JDIS and Criminal Operations paper files were the places where records responsive to Pichardo-Martinez's FOIA request likely would be located. *Id.* ¶ 10.

In March and July 2019, USMS's FOIA liaison for E/PA "conducted a search of all appropriate subject matter files and/or systems of records maintained by E/PA, including records related to Warrants, Civil, Criminal, and Seized Assets," without revealing which terms he used to conduct his search. *Id.* ¶ 12; *see id*. ¶¶ 13–14. The search yielded 51 pages of records, 47 of which OGC found responsive to Pichardo-Martinez's request. *See id*. ¶¶ 12, 14.

The liaison conducted another search of JDIS in February 2020, *see id*. ¶¶ 15–16, "using Plaintiff's name and Criminal Operations paper files, and located the Inmate File for 'Angel Pichardo-Martinez,'" *id*. ¶ 16. Other "E/PA personnel handling Warrants . . . queried JDIS using Plaintiff's name as a search term, and located a [potentially responsive] record." *Id.* ¶ 17. Using Pichardo-Martinez's last name and full name as search terms, a query of the Department of Justice Consolidated Asset Tracking System ("CATS"), "a system that covers persons involved with the ownership of or claims upon property seized for forfeiture under specified Federal statutes and law enforcement policies," *id*. ¶ 19, also yielded potentially responsive records, *id*. ¶ 18.

OGC personnel "reviewed and cross-referenced the records that E/PA forwarded . . . in March 2019, July 2019, and February 2020" and determined that the results of the February 2020 search were the same as the results of the March 2019 and July 2019 searches. *Id.* ¶ 21.

### 2. Northern District of Ohio

N/OH maintains records about prisoners taken into USMS custody in that district. *Id.* ¶ 22. As with E/PA, its personnel have access to JDIS, CATS, emails, and subject matter and paper files. *See id.* OGC again determined that JDIS and Criminal Operations files were the locations most likely to have records responsive to Pichardo-Martinez's FOIA request. *Id.* ¶ 23. "Due to an administrative oversight, OGC did not contact the N/OH liaison in . . . February 2019," and sent a request in July 2019 for him to "search . . . every subject matter file in which responsive records are most likely maintained." *Id.* ¶ 24.

N/OH personnel, using Pichardo-Martinez's USMS number as a search term, queried JDIS and searched paper files. *Id.* ¶ 25. This search yielded four pages of responsive records. *Id.* A second search in February 2020 of JDIS, Criminal Operations paper files, and emails, using Pichardo-Martinez's last name and USMS number yielded a paper copy of his criminal file. *Id.* ¶ 27. N/OH forwarded all these records to OGC for processing, *id.*, and OGC determined that the records located in February 2020 were not responsive to Pichardo-Martinez's request, *id.* ¶ 29.

### 3. Prisoner Operations Division

Among other responsibilities, POD is charged with the processing, housing, transportation, and care of federal prisoners in its custody. *See id.* ¶ 30. OGC determined that three offices within POD were likely to maintain information potentially responsive to Pichardo-Martinez's FOIA request. *See id.* ¶ 32.

#### a. Office of Medical Operations

The Office of Medical Operations is responsible for the medical care of prisoners in USMS custody. *See id.* ¶ 33. Its Electronic Prisoner Medical Request system ("ePMR")

maintains prisoner medical records. *Id*. A search of ePMR using Pichardo-Martinez's USMS number as a search term yielded three pages of potentially responsive records. *Id*. ¶ 36.

### b. Office of Detention Services

The Office of Detention Services ("ODS") is responsible for managing and evaluating facilities where prisoners in USMS custody are detained. *See id*. ¶ 34. It maintains information "related to Intergovernmental Agreements ('IGAs') and Contracts . . . to procure housing for prisoners in USMS custody" in electronic and paper format. *Id*. An ODS Grant Specialist "searched the IGA electronic database by facility name (Lake County Jail, as indicated in Plaintiff's FOIA request) and State." *Id*. ¶ 37. The search yielded 11 pages of records related to the Lake County Jail. *Id*. An ODS Contracts Specialist "searched the Contract Files by facility name (Community Corrections Association(s), as indicated in Plaintiff's FOIA request) and/or contract number in both electronic and paper formats," and found no responsive records. *Id*.

### c. Office of Detention Operations

The Office of Detention Operations develops policies and procedures about prisoners and their detention. *Id*. ¶ 35. It also "monitor[s] prisoner related incidents, such as assaults, by searching and accessing data in JDIS." *Id*. A search of JDIS using "Plaintiff's name and USMS number for information about an alleged assault against Plaintiff . . . did not locate any responsive records." *Id*. ¶ 38.

USMS released 69 pages of records to Pichardo-Martinez in two batches, from which it withheld certain information under Exemptions 6, 7(C), 7(E), and 7(F). *See id*. ¶¶ 2–3, 39–41. In March 2019, USMS released 51 pages of records, *id*. ¶ 2, and it made a supplemental release of 18 pages in August 2019, *id*. ¶ 3. The August release included "4 pages of re-processed material." *Id*. USMS withheld certain information from 4 pages in error, reprocessed them, and

released them to Pichardo-Martinez in revised form.  See 2d Suppl. Decl. Ex. D at 27, ECF No. 28-3.

## II. DISCUSSION

### A. Legal Standard

#### 1. Summary Judgment in a FOIA Case

Courts decide the "vast majority" of FOIA cases on motions for summary judgment. *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions."  *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008).  Thus, a FOIA defendant is entitled to summary judgment if it shows that no genuine dispute about whether "each document falls within the class requested either has been produced, is unidentifiable or is wholly exempt from [FOIA's] inspection requirements."  *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980).

The Court may grant summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017).  If the agency's affidavit meets these criteria, "then summary judgment is warranted on the basis of the affidavit alone."  *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Id.* (cleaned up).

### 2. Pichardo-Martinez's Opportunity to Respond to USMS's Motion

USMS timely filed its Second Renewed Motion for Summary Judgment on March 5, 2020. Def.'s Mot., ECF No. 28. In compliance with Local Civil Rule 7(h) and paragraph 14 of this Court's Standing Order, USMS submitted a statement of material facts for which it contends there is no genuine dispute, with references to the portions of the record on which it relies. SMF ¶¶ 1–41.

The next day, the Court advised Pichardo-Martinez of his obligation to respond to USMS's motion. Order at 1, ECF No. 29 (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), and *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992)). He was advised that, if he failed to respond to the motion by April 2, the Court may treat the motion as conceded. To date, Pichardo-Martinez has not filed an opposition or other response. Without a response from him, the Court treats USMS's assertions of fact as admitted. *See Neal*, 963 F.2d at 456. Still, USMS cannot prevail on summary judgment unless it shows that there is no material fact in dispute and that it is entitled to judgment as a matter of law. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507–08 (D.C. Cir. 2016) (noting that "the District Court may enter summary judgment only if, after fully considering the merits of the motion, it finds that it is warranted"); Fed. R. Civ. P. 56(a).

So this Court assesses the motion on its merits even without an opposition brief. Indeed, this Court previously denied USMS's motion for summary judgment in this case, notwithstanding the fact that Pichardo-Martinez failed to meaningfully oppose it. *See Pichardo-Martinez v. United States Marshals Serv.*, No. 1:18-CV-2674 (TNM), 2019 WL 2905054, at *1 (D.D.C. July 3, 2019). This time, however, USMS hits the mark.

### B. Adequacy of USMS's Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (cleaned up). "The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up).

The Court may grant summary judgment based on the agency's supporting declarations, *see Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), but to prove the reasonableness of an agency's search, the declarations must specify "what records were searched, by whom, and through what process." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). An agency's declarations are presumed to have been submitted in good faith, and absent contrary evidence, they are sufficient to demonstrate an agency's compliance with FOIA." *North v. DOJ*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).

The Court need not repeat what is described above and explained in great detail in USMS's second supplemental declaration. Based on the information Pichardo-Martinez provided, it is reasonable for USMS to have searched for responsive records in the two federal districts—the Eastern District of Pennsylvania and the Northern District of Ohio—where he had been detained, and in databases containing information about assaults and medical care provided for prisoners in USMS custody. The Court has reviewed USMS's statement of material facts and supporting declarations and concludes that the agency conducted reasonable searches for records responsive to Pichardo-Martinez's two FOIA requests.

### C. Information Withheld Under FOIA Exemption 7

#### 1. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only if disclosure of such records would cause an enumerated harm. *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (cleaned up).

The Court accepts the declarant's representation that all the responsive records "were compiled by the USMS, a law enforcement agency, in the course of Plaintiff's arrest and custody by the USMS." 2d Suppl. Decl. ¶ 47. Thus, USMS shows that the responsive records were compiled for law enforcement purposes and that Exemption 7 applies.

#### 2. FOIA Exemption 7(C)

Exemption 7(C) protects from disclosure information found in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763–65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the

public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (cleaned up).

USMS withheld the names of law enforcement personnel with USMS, the Federal Bureau of Prisons ("BOP"), and a state correctional facility who were "directly or indirectly involved in matters related to the arrest, custody and/or health care of Plaintiff," and any information, such as email addresses, "by which those individuals could be identified." 2d Suppl. Decl. ¶ 50.

The declarant explains that "release of the identities of USMS, BOP, and state correctional facility personnel . . . could subject [them] to unwarranted public attention, harassment, and annoyance." *Id.* ¶ 51. USMS identifies no public interest in the release of such personal identifying information, and of course, Pichardo-Martinez provides no response to USMS's assertion that non-disclosure "foster[s] privacy and the efficient performance of official duties regarding the receipt, processing, transportation and custody of prisoners, the execution of federal arrest warrants, and/or the investigation of threat[s]." *Id.*

For similar reasons, USMS withheld the names of other third parties, including those "directly or indirectly involved in matters related to the arrest, custody and/or health care of Plaintiff," and any information by which these third parties could be identified. *Id.* ¶ 53. Disclosure of this information, the declarant states, "could subject them to unwarranted public attention, harassment, and annoyance." *Id.* ¶ 54. USMS discerns no public interest in disclosure to outweigh the privacy interest of these individuals. *See id*. ¶¶ 54–55. Nor would disclosure "shed light on [the] agency's performance of its statutory duties." *Id.* ¶ 54.

The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Without a response from Pichardo-Martinez and on review of USMS's supporting declaration and Vaughn Index, *see* 2d Suppl. Decl. Ex. E at 30–36, ECF No. 28-3, the Court finds that USMS has properly withheld the names of and identifying information about third parties, including law enforcement personnel, appearing in the responsive records.

### 3. FOIA Exemptions 6 and 7(F)

When USMS relies on Exemptions 6 and 7(F), it does so in conjunction with Exemption 7(C). *See* Vaughn Index (Doc. Nos. 29–35). Because the Court has concluded that the same information properly is withheld under Exemption 7(C), it need not consider whether Exemptions 6 and 7(F) apply. *See Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("If the information withheld here was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then [the Court] would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."); *Dorsey v. DEA*, 650 F. App'x 41, 42 (D.C. Cir. 2016) (per curiam) ("We need not evaluate the merits of the [agency's] invocation of Exemption 7(F), because it overlaps in this case with Exemptions 7(C) and 7(D).").

### 4. FOIA Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

12

investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). USMS withheld three Uniform Resource Locators (URLs): the web addresses of (1) "a Federal Judiciary electronic database" that gives access to case and docket information; (2) USMS's internal system containing information about prisoners' health care; and (3) a state corrections department's online database for locating inmates. 2d Suppl. Decl. ¶ 59. It also withheld "a requisition/purchaser/requester number and a facility code on an Intergovernmental Agreement." *Id.*

> The declarant explains:
>
> Disclosure of information such as internal URLs, codes, and identifying numbers could assist unauthorized parties in deciphering the meaning of the codes and numbers, aid in gaining improper access to databases limited to authorized users, including law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases. Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by the USMS during enforcement operations. Further, how law enforcement personnel access databases and internally label cases are law enforcement techniques and procedures that are not commonly known.

*Id.* ¶ 60; *see* Vaughn Index (Doc. Nos. 9, 14, 28, 34–35).

Thus, USMS meets Exemption 7(E)'s "relatively low bar," because its declarant "demonstrate[s] logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. It is enough for the declarant to aver that release of the withheld information could enable unauthorized users to navigate databases and potentially "counter operational and investigative actions taken by the USMS during enforcement operations." Vaughn Index (Doc. Nos. 9, 14, 28, 34–35). *See Gonzalez v. USCIS*, No. 19-cv-2911 (JGK), --- F. Supp. 3d ----, ----, 2020 WL 4343872, at *12 (S.D.N.Y. July 29, 2020) (concluding that "[t]he manner by which the law enforcement agencies in this case label cases, access databases, and maintain information regarding cases in general falls within FOIA

Exemption 7(E)"); *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 310–11 (D.D.C. 2018) (withholding internal URLs under Exemption 7(E)); *Pinson v. DOJ*, 177 F. Supp. 3d 56, 90 (D.D.C. 2016) (withholding "FBI internal web addresses because revelation would provide criminals with potential targets for cyber-attacks").

### D. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pac. Policing Agr. v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). A court may not "simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Here, USMS's declarant represents that "no reasonably segregable non-exempt portions [of the responsive records] were withheld from Plaintiff." 2d Suppl. Decl. ¶ 63. On review of the supporting declaration and Vaughn Index, the Court agrees that USMS has released all reasonably segregable information. *See Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("The combination of the *Vaughn* index and the [agency's] affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated.").

### III. CONCLUSION

USMS has now shown that it conducted a reasonable search for records responsive to Pichardo-Martinez's FOIA requests, that it properly withheld information under Exemptions

7(C) and 7(E), and that it released all reasonably segregable information.  Accordingly, the Court will grant its second renewed motion for summary judgment.  A separate Order will issue.

Dated:  October 7, 2020                                                          TREVOR N. McFADDEN, U.S.D.J.